**Lillian KOCHIN, Plaintiff,**

v.

**EATON CORPORATION; Eaton Corporation Industrial Truck Division; and Yale Material Handling Corporation; Defendants.**

Civ. No. H88–542.

United States District Court,
N.D. Indiana,
Hammond Division.

June 30, 1992.

Bernard R. Nevoral, Bernard R. Nevoral & Assoc., Ltd., Chicago, Ill., for plaintiff.

John R. Fanone and Robert D. Kolar, Chicago, Ill., Paul A. Leonard, Jr., Goodman Ball and VanBokkelen, Highland, Ind., for defendants.

## ORDER

LOZANO, District Judge.

This matter is before the Court on Plaintiff, Lillian Kochin's ("Kochin"), Post–Trial Motion Pursuant to Federal Rules of Civil Procedure 50 and 59, filed February 16, 1990. Being advised in the premises, Kochin's Motion is hereby DENIED.

## BACKGROUND

In this case, Kochin was injured while she was working for her employer, the Packaging Corporation of America, when another employee backed up a forklift truck into her. The forklift, manufactured by Yale Material Handling Corporation ("Yale"), was modified after its purchase by Kochin's employer, by adding a rotating yellow light which operated during the forklift's operation. Kochin alleges that the forklift was unreasonably dangerous because Yale failed to install a rearview mirror, a back-up alarm horn, or a flashing warning lamp, which would aid the forklift operator in ascertaining whether someone was behind the forklift or indicate to a bystander when the forklift was operating in the reverse direction mode. Kochin claims that Yale is strictly liable for her injuries.[1] The jury returned a verdict against Kochin on February 7, 1990.

By her Motion, Kochin requests this Court to either (1) enter judgment for Kochin, notwithstanding the verdict, or in the alternative, (2) grant her a new trial because this Court erred in various rulings which resulted in a miscarriage of justice.

## DISCUSSION

■ Under Rule 50(b) of the Federal Rules of Civil Procedure, once a party moves for a directed verdict at the close of the evidence offered by an opponent, and the motion is denied, the party may file a motion for judgment notwithstanding the verdict within ten (10) days after entry of judgment. In diversity actions, state law governs the disposition of motions for a directed verdict and judgment notwithstanding the verdict. *Horton v. Miller Chemical Co., Inc.,* 776 F.2d 1351, 1355 (7th Cir.1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986); *F.W. Hempel & Co. v. Metal World, Inc.,* 721 F.2d 610, 613 (7th Cir.1983). In determining a motion for judgment notwithstanding the verdict, this Court may not weigh the evidence, but must view it in the light most favorable to the nonmoving party, and may not enter judgment if there is relevant evidence supporting a claim, although conflicting. *Berg v. Glinos,* 538 N.E.2d 979, 983 (Ind.Ct.App.1989); *Tancos v. A.W., Inc.,* 502 N.E.2d 109, 115 (Ind.Ct.App.1986). Further, this Court may not judge the credibility of the witnesses. *Coffel v. Perry,* 452 N.E.2d 1066, 1068 (Ind.Ct.App.1983). Judgment notwithstanding the verdict is proper only where the evidence is insufficient to support the verdict as a matter of law. *Id.; Berg,* 538 N.E.2d at 982.

■ Although a motion for judgment notwithstanding the verdict is determined by state law, a motion for a new trial is determined by federal law, even in a diversity case. *Wassell v. Adams,* 865 F.2d 849, 854 (7th Cir.1989); *Davlan v. Otis Elevator Co.,* 816 F.2d 287, 289 (7th Cir.1987). A motion for a new trial is left to the sound discretion of the district court. *Roggow v. Mineral Processing Corp.,* 894 F.2d 246, 249 (7th Cir.1990); *Sellers v. Baisier,* 792 F.2d 690, 693 (7th Cir.1986). "A new trial can be granted only when the jury's verdict is against the clear weight of the evidence." *Davlan,* 816 F.2d at 289. To receive a new trial based on judicial error, a movant must show that the error was substantial enough to deny the movant a fair

---

**1.** Kochin withdrew her negligence claims and now proceeds only under a theory of strict liability. This Court granted Eaton Corporation's Motion for Summary Judgment in an Order dated February 5, 1990. Consequently, the only Defendant remaining is Yale Material Handling Corporation.

trial. *Perry v. Larson,* 794 F.2d 279, 285 (7th Cir.1986). Thus, to determine whether a new trial is warranted in this case, the Court must decide if the verdict was against the weight of the evidence, or if for other reasons, the trial was not fair to the Kochin. *Forrester v. White,* 846 F.2d 29, 31 (7th Cir.1988); *Davis v. FMC Corp.,* 771 F.2d 224, 232–33 (7th Cir.1985).

### Evidence of Rotating Yellow Light on Forklift

■ Kochin claims that this Court committed error on three points, which individually and cumulatively deprived her of a fair trial. First, Kochin claims that this Court erred in denying her Motion in Limine No. 6, in which Kochin moved to bar the introduction of any evidence regarding her employer's alteration of the forklift by adding a rotating yellow light to it. Kochin claims this Court further compounded its error by permitting defense counsel to inquire of various witnesses concerning this modification, and by allowing defense counsel to argue this matter to the jury over Kochin's objection. Kochin claims that Yale's duty in this case was to design, manufacture, and market a product which was not "in a defective condition unreasonably dangerous to any user or consumer." Ind.Code Ann. § 33–1–1.5–3(a) (Burns 1988). This duty is nondelegable. *Jarrell v. Monsanto Co.,* 528 N.E.2d 1158, 1164 (Ind.Ct.App.1988). Kochin argues that the issue for the jury was whether the absence of manufacturer-installed safety devices, *i.e.,* the lack of a rearview mirror or automatic back-up alarm, on the forklift rendered the product defective and unreasonably dangerous. Kochin avers that this Court's error in denying her motion in limine interjected information that was neither relevant, material or probative to the question of whether Yale designed, manufactured and marketed a product which was in a defective condition and unreasonably dangerous. Kochin claims that this error confused the jury as to Yale's nondel-

egable duty to design, manufacture and market a product which was not in a defective condition unreasonably dangerous to the user or consumer. Kochin further asserts that this Court compounded its error by allowing testimony that the light either was or was not operating on the day of the accident. As a result, this permitted the jury to speculate that if Kochin's employer did not maintain the light, they would not have maintained the automatic back-up alarm system, as defense counsel argued.[2]

In Yale Materials Handling Corporation's Response to Plaintiff's Post–Trial Motion, filed March 2, 1990, Yale claims, without providing this Court an iota of legal authority, that Kochin had to prove as an essential element of her cause of action, that the forklift found its way to this accident in the same condition without a substantial alteration. In this vein, the evidence of the light on the forklift was relevant. Further, Yale argues that at no time was it suggested that the existence of the back-up light in any way relieved the manufacturer of any responsibility that it might have had in this case, and that at the time such testimony was elicited at trial, Kochin made no objections to the introduction of this evidence. Therefore, Yale claims that Kochin has waived any "alleged error" as to the introduction of this testimony.

Defendants are correct. Upon cross-examination of Dale Voorhees, defense counsel elicited testimony about the light on the forklift, and asked forty-three (43) questions of the witness regarding this light before Plaintiff's attorney objected to the line of cross-examination. (R. at 124–129) On the forty-fourth question, Plaintiff's counsel objected to the following:

Q. So then sometime even before this Yale ever got into this factory, Packaging Corporation recognized that it might be necessary to have some sort of back-up signal of some kind?

(R. at 129) After discussion on Plaintiff's objection, defense counsel withdrew the

---

**2.** Kochin also argues that in allowing this evidence, a nonparty defense was interjected, despite this Court's ruling that such a defense was not available to Yale. This argument holds little

water, as there were no instructions given on the nonparty defense, nor was there argument on such a defense, which is only applicable in negligence actions.

question. The light was also referred to in the cross-examination of Roland Ruhl, and again, Plaintiff's counsel failed to object. (R. at 180, 188–89) When Plaintiff's counsel finally objected to the forty-fourth question of Mr. Voorhees, and defense counsel later withdrew the question, Plaintiff's counsel did not make a motion to strike the testimony already elicited, apparently conceding the point that he had waived any objection about the admission of such testimony. As Plaintiff repeatedly failed to object to the admission of this testimony, Plaintiff waives her right to raise such objection in her Motion for New Trial or Judgment Notwithstanding the Verdict. *Myers v. Moody*, 475 F.Supp. 232, 237 (N.D.Tex.1979), *aff'd*, 693 F.2d 1196 (5th Cir.1982); *Brescia v. Ireland Coffee–Tea, Inc.*, 73 F.R.D. 673, 676 n. 7 (E.D.Pa. 1977). Further, this Court finds that the introduction of this evidence was relevant as to the issue of proximate cause of the accident and is an essential element of Kochin's case, that is, that the forklift remained in the same condition without substantial alteration. Accordingly, Kochin's Motion with regard to the testimony of the light added to the forklift is hereby DENIED.

*Assumption of Risk Defense*

■ Kochin also claims that this Court erred in denying her motion to strike Defendant's pleaded defense of assumption of risk, and in tendering Instruction No. 30, which reflects Yale's defense. Under Indiana products liability law, the defense of assumption of risk is available to a defendant: "It is a defense that the user or consumer bringing the action knew of the defect and was aware of the danger and nevertheless proceeded unreasonably to make use of the product and was injured by it." Ind.Code Ann. § 33–1–1.5–4(b)(1) (Burns 1988). As required by Indiana law, Yale pled this defense in its Answer as an affirmative defense. *Accord FMC v. Brown*, 526 N.E.2d 719, 726 (Ind.Ct.App. 1988). In its Answer, Yale claimed that Kochin (a) knew or should have known of the dangers of placing herself in the path of moving machinery; (b) notwithstanding

such knowledge, Kochin placed herself in the path of moving machinery; and (c) remained in the path of moving machinery when she knew or should have known of the dangers associated with such action. Kochin admits that the evidence taken in the light most favorable to Yale, indicated that Kochin was aware of the danger of forklifts backing through the area of the water fountain, where she was injured, and that she nevertheless stepped out into the forklift path without looking. However, Kochin argues that there was no evidence adduced at trial that she knew of the defect which made the product unreasonably dangerous, and then after such knowledge of the defect, she assumed the risk presented by the moving forklift. Kochin claims that it is essential that Yale prove that Plaintiff knew of the defect in the product. Further, Kochin argues that as she was neither a user or consumer of the forklift, the affirmative defense of assumption of the risk does not apply.

■ In support of this, Kochin cites *Masterman v. Veldman's Equip., Inc.*, 530 N.E.2d 312, 316 (Ind.Ct.App.1988). In *Masterman*, the plaintiff was injured, while driving her car, when a pick-up truck with a snow plow attached to its front drove into her car. Defense counsel argued that the danger of a snowplow mount was open and obvious within the meaning of *Bemis Co. v. Rubush*, 427 N.E.2d 1058 (Ind.1981), *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). In discussing whether this defense was available to the defendant in this case, the court stated "Bemis stated a defense against an injured user of the product. It has no application to a bystander for in no legal sense can he be said to have used the product or voluntarily incurred the risk." *Masterman*, 530 N.E.2d at 316. *See Gregory v. White Truck & Equipment Co.*, 163 Ind.App. 240, 323 N.E.2d 280, 287, 290 (1975). However, the issue in *Masterman* was what a bystander-plaintiff would have to prove in order to meet the defective condition element of a strict liability cause of action. In this sense, the court's comment regarding the availability of the assumption of risk defense when a bystander is injured was

merely dicta from one Indiana Appellate Court.

In *Gilbert v. Stone City Construction Co.*, the bystander-plaintiff, a highway construction inspector, was injured when a road roller struck him from behind and ran over the lower part of his body. 171 Ind. App. 418, 357 N.E.2d 738, 741 (1976). In holding that an incurred risk instruction was proper, the Indiana Appellate Court stated that:

> [O]ne incurs all the normal risks of a voluntary act—so long as he knows and understands them, or if they are readily discernible by a reasonably prudent person in similar circumstances ... We conclude that there was conflicting evidence as to whether Gilbert was aware of the risks presented and it is for a jury to determine whether dangerous defects in heavy equipment are readily ascertainable by a bystander.

*Id.* 357 N.E.2d at 746. It must be noted that *Gilbert* was decided before the enactment of Indiana's Product Liability Statute in 1978. However, in *FMC Corp. v. Brown*, which was decided after the statute was enacted, the Indiana Supreme Court did not find that the trial court erred when it used an incurred risk instruction. 551 N.E.2d 444, 449 (1990). In *Brown*, the plaintiff, a bystander, was electrocuted while acting as a ground man, when a crane operated by another individual came into contact with a power line. *Id.* at 449.

This Court has conducted an independent review of cases in every state as to whether the assumption of risk defense is available in bystander cases, and has found four cases on point, one being the *Masterman* case. In *Baker v. Chrysler Corp.*, a California case, a bystander sued the manufacturer of a car which crashed into him while the bystander was walking down the street. 55 Cal.App.3d 710, 714, 127 Cal. Rptr. 745 (1976). The bystander was walking in the direction that the car was coming from when the accident occurred. *Id.* The plaintiff objected to the assumption of risk jury instruction given by the court. The Court of Appeals stated that the giving of this instruction was not in error, because

"[s]o long as there is any substantial evidence to support a theory advanced by a party, the court is justified in giving an instruction upon that theory." *Id.* at 717, 127 Cal.Rptr. 745. Further, the Court noted that:

> Appellant asserts that assumption of the risk is a defense which is applicable only against users or consumer of the product in strict liability cases, and is inapplicable to bystanders who are injured by the defective product. The public policy which enforces strict liability from manufacturing and design defects in favor of consumers and users also applies to bystanders. (citations omitted) But even bystanders are subject to the defense of assumption of risk. (*Morton v. California Sports Car Club* (1958) 163 Cal. App.2d 685, 687 [329 P.2d 967].) Here, the alleged defective design of the front end of the Dodge obviously did not cause the accident in which appellant was injured. Appellant's sole contention is that his injuries were aggravated by the defective design and could have been materially less severe with a nondefective design. But the risk arguably assumed by appellant was not what the extent of his injuries would be, whether the design of the front end of the car was defective or not; the risk was that appellant would be struck and injured. The fact that appellant was neither a consumer nor a user of the auto, which only incidentally had an alleged defectively designed front end, has no bearing on any risk assumed by him. It was therefore proper to instruct on assumption of risk.

*Id.* 55 Cal.App.3d at 719, 127 Cal.Rptr. 745.

In *Barr v. Rivinius, Inc.*, an Illinois case, an employee was injured when a spreader ran over his leg, knocking him down. 58 Ill.App.3d 121, 15 Ill.Dec. 591, 591, 373 N.E.2d 1063, 1063 (Ill.App.Ct. 1978). Again, plaintiff-bystander objected to the giving of the assumption of risk instruction. In holding that the assumption of risk defense does not apply to plaintiff-bystanders, the Court stated:

> It seems to us that part of the difficulty in drafting a correct instruction on assumption of the risk defense applicable

to the evidence stemmed in part from the fact that the plaintiff was not using the product he claims was defective ... Assumption of risk in strict liability is grounded upon the simultaneous existence of knowledge and use of a product which contains an unreasonably dangerous defect. Use denotes an immediate means of controlling the object claimed to contain an unreasonably dangerous defect. The law reasons that if an individual has the power to stop using a product which he knows contains an unreasonably dangerous condition, but fails to do so, he is not entitled to the protection afforded by concepts of strict liability. Hence, it would seem that if the two, use and knowledge, fail to exist in conjunction with one another, the defense of assumption of the risk is not available.

Thus, the Illinois Appellate Court agreed with the outcome in *Masterman.*

■ This Court is in accord with the position of the courts in *Brown, Gibson,* and *Baker* that an incurred risk instruction is applicable in cases where the plaintiff is a bystander. Further, if the Court accepts Kochin's argument, the assumption of risk defense would have no application under the facts of this case. Kochin claims that the assumption of risk defense only applies to a user or consumer. This Court can conceive of no set of facts how Ms. Schofield, the driver of the forklift, could have assumed a risk of injury due to a lack of warning devices on the forklift. The mirror, flashing light, or beeper is to warn a bystander, not the forklift driver. So under the facts of this case, the only person who could assume the risk, that is, the risk that someone would be injured due to a lack of a warning device, would be a bystander, and not the forklift operator. Query, how could a forklift operator be impaired by a lack of warning devices which are used to alert inattentive or unknowledgeable bystanders?

■ Moreover, this Court finds that there is ample evidence in the record to support giving of the incurred risk or assumption of risk instruction. (R. at 94–96, 98–99, 105–106, 236–246, and 251–253) Under Indiana law, a party is entitled to an instruction on a proposition of law if there is evidence in the record to support giving the instruction to the jury. *State v. Ingram,* 427 N.E.2d 444, 448 (Ind.1981); *Mullins v. Bunch,* 425 N.E.2d 164, 165 (Ind. 1981). Accordingly, the Court's denying Kochin's Motion to Strike Yale's defense of assumption of risk was proper, and Kochin's Motion is DENIED in this respect.

■ Next, this Court must decide whether it was proper to tender Court's Instruction No. 30. Court's Instruction No. 30 reads as follows:

In determining whether the plaintiff, Lillian Kochin, incurred the risk, you may consider the experience and understanding of the plaintiff—whether she had reasonable opportunity to observe the forklift moving in reverse and whether a person of ordinary prudence, under those circumstances, would have observed the forklift moving in reverse.

Kochin argues that this Court erred in instructing the jury whether a person of ordinary prudence, under those circumstances, would have seen the moving forklift based on the Indiana Supreme Court's decision in *Koske v. Townsend Engineering Co.,* 551 N.E.2d 437 (Ind.1990). During trial, Kochin objected to the above instruction because she asserted the test for whether one assumed the risk was subjective and not objective based on *Gilbert v. Stone City Constr. Co.,* 357 N.E.2d 738, 746 (Ind.App. 1976). According to *Gilbert,* as quoted *infra,* the test is both subjective and objective, so this Court did not err in this respect.

However, in *Koske,* the Indiana Supreme Court decided that under Section 4(b)(1) of the 1978 Product Liability Act, the "evaluation of the product user's conduct (is to be judged) by a subjective rather than an objective standard." *Koske,* 551 N.E.2d at 442 n. 3. This statement was in reference to the availability of the open and obvious defense in a product liability action, but is equally applicable to the incurred risk defense, as the Court cited the incurred risk section of the statute in support of the proposition that a subjective standard

should be used. Unfortunately, this Court did not have the benefit of the decision in *Koske,* as *Koske* was handed down in March, and the jury returned a verdict in this case on February 7, 1990. The Court's Instruction No. 30 was a variation of Indiana Pattern Instruction No. 561, which is in the Negligence/Comparative Fault section of the Indiana Pattern Instructions. The Court also gave the jury Court's Instruction No. 27, which stated that "[i]t is a defense to a products liability action predicated on strict liability that the plaintiff incurred the risk of injury. A risk is incurred when a person knows of a defect in a product, is aware of the danger and nevertheless proceeds unreasonably, and is injured." This is a correct statement of the law and tracks the language in the statute. So, the Court gave one instruction which says that incurred risk is determined by both a subjective and objective standard, and one instruction that says it is a subjective standard. Moreover, defense counsel argued to the jury both standards during his closing argument. (R. at 439–441.)

Under Indiana law, a jury instruction which mistakes the law is a ground for reversal only where the jury's verdict was predicated on the erroneous instruction. *Canfield v. Sandock,* 563 N.E.2d 1279, 1282 (Ind.1990); *State Exchange Bank of Culver v. Teague,* 495 N.E.2d 262, 270 (Ind. Ct.App.1986); *Zimmerman v. Moore,* 441 N.E.2d 690, 693 (Ind.Ct.App.1982). Moreover, a "judgment will not be reversed upon an erroneous instruction when it affirmatively appears from answers to interrogatories that the instruction complained of was not influential in inducing the verdict." *Cleveland C., C. & I. Ry. Co. v. Newell,* 104 Ind. 264, 3 N.E. 836, 841 (1885).

In the Special Interrogatories posed to the jury, the jury answered "No" to Question No. 1, which asked, "Was the forklift in a defective condition unreasonably dangerous to the plaintiff?" As the jury answered "No" to this question, it never had the opportunity to decide Question No. 3, which asked the jury, "Did Lillian Kochin incur the risk?" Thus, the question of whether Kochin incurred the risk did not factor into the jury's deliberations, as it found that the forklift was not in a defective condition unreasonably dangerous to Kochin. Accordingly, although it was error to give Instructions No. 30 and 29 as they were conflicting, Kochin was not prejudiced in any way because the jury never had to reach the question of whether Kochin incurred or assumed the risk.

## CONCLUSION

This Court finds that it made no error in admitting evidence of the installation of a light on the forklift by Kochin's employer and in denying Kochin's Motion to strike Yale's affirmative defense of assumption of risk, and as such a new trial is not warranted based on prejudicial error. Further, although the Court erred in tendering conflicting instructions on incurred risk or assumption of risk, such an error does not warrant a new trial because the jury did not predicate its decision on these instructions. Taken in this light, this Court finds that Kochin was not denied a fair trial. Further, the Court finds that in viewing the evidence in a light most favorable to Yale, there is ample evidence to support the jury's verdict in favor of Yale and against Kochin. Yale severely damaged Kochin's case upon cross-examination of Kochin's witness, Ms. Shoffield and Kochin, herself. In fact, Plaintiff's own expert could not testify with any degree of certainty whether or not the existence of a rearview mirror would have prevented the accident. (R. 171) As such, Kochin's Motions for Judgment Notwithstanding the Verdict and for New Trial are hereby DENIED.